# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| DOUG TRAHER, individually and on behalf of all other similarly situated shareholders of REPUBLIC FIRST BANCORP, INC., <br><br> Plaintiff, <br><br> v. <br><br> REPUBLIC FIRST BANCORP, INC., <br><br> Defendant. | Civil Action No. _____ <br><br> Class Action <br><br> Jury Trial Demanded |

## VERIFIED SHAREHOLDER CLASS ACTION COMPLAINT

Plaintiff Doug Traher ("Plaintiff"), on behalf of himself and all other similarly situated shareholders of Defendant Republic First Bancorp, Inc. ("Republic First" or the "Company"), asserts claims against Republic First for violation of the Company's Amended and Restated Articles of Incorporation (the "Articles of Incorporation"), for a determination that the shareholder vote that purportedly doubled the number of issuable authorized shares of common stock was invalid under 15 Pa. C.S. § 1793, and for declaratory judgment under 42 Pa. C.S. § 7531-41.[1]

## NATURE AND SUMMARY OF THE ACTION

1. In early 2016, Republic First's shareholders were asked to approve an amendment to the Articles of Incorporation which would double the Company's issuable authorized common stock, from 50,000,000 shares to 100,000,000 shares (the "Authorized Shares Amendment").

---

[1] Plaintiff's allegations are made upon personal knowledge as to himself and his own acts, upon information and belief as to other matters, and are based upon the investigation conducted by and through his attorneys, which included, *inter alia*, a review of media reports and documents Republic First filed with the U.S. Securities and Exchange Commission (the "SEC").

2.      Pursuant to the Articles of Incorporation, the Authorized Shares Amendment required the approval of 60% of the Company's outstanding shares to pass. Accordingly, simply by not voting a shareholder was effectively casting a vote against the Authorized Shares Amendment. Shareholders who owned their stock through brokerage accounts were explicitly told that if they did not submit voting instructions to their broker, the broker would not have discretionary authority to vote the shares on the Authorized Shares Amendment and that their shares would effectively constitute a vote "against" the Authorized Share Amendment.

3.      Shareholders owning 8,881,894 shares of Republic First elected to oppose the Authorized Shares Amendment by withholding voting instructions from their brokers.

4.      At the shareholder meeting where the Authorized Shares Amendment was considered, the will of these investors was thwarted. Rather than having their shares counted as effective "no" votes against the amendment, brokers were improperly allowed to vote the uninstructed shares, and they did so in favor of approval.

5.      Without the support of uninstructed broker votes, the Authorized Shares Amendment would have failed by more than 5,000,000 votes. Instead, the Company improperly deemed the Authorized Shares Amendment approved, and the Company then issued millions of new shares under that false authority.

6.      Shareholders were entitled to rely on the voting instructions they were given, including the instruction that they could oppose the amendment simply by not submitting voting instructions. Accordingly, Plaintiff brings this action to enforce the shareholder franchise and to overturn the wrongful purported approval of the amendment.

## JURISDICTION AND VENUE

7.      This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332 because the parties are of diverse citizenship and the matter in controversy exceeds $75,000.00, exclusive of interests and costs.

8.      The Court has jurisdiction over Republic First because it is a Pennsylvania corporation that conducts business in and maintains operations in this District, and has sufficient

minimum contacts with the District to render the exercise of jurisdiction by this Court permissible under traditional notions of fair play and substantial justice.

9. Venue is proper in this District pursuant to 28 U.S.C. § 1391 because Republic First is a Pennsylvania corporation that maintains its principal place of business in the District and because a substantial portion of the transactions and wrongs, including Republic First's primary participation in the wrongful acts complained of herein, occurred in the District.

## PARTIES

10. Plaintiff Doug Traher has been a shareholder of Republic First continuously since 2015. Traher is a citizen of New Jersey.

11. Defendant Republic First is a Pennsylvania corporation that maintains its principal offices at 50 South 16th Street, Suite 2400 in Philadelphia, Pennsylvania. As described in its most recent SEC Form 10-K Annual Report, the Company is the holding company for Republic First Bank (the "Bank") which offers a variety of credit and depository banking services to individuals and businesses primarily in the Greater Philadelphia and Southern New Jersey area. Republic First is a citizen of Pennsylvania.

## SUBSTANTIVE ALLEGATIONS

### A. The Company's Articles of Incorporation

12. The Articles of Incorporation constitute a contract between Republic First and its shareholders.

13. As of March 2016, the Articles of Incorporation authorized the Company to issue no more than 50,000,000 shares of common stock (the "Authorized Shares"). Specifically, Article V of the Articles of Incorporation provided in pertinent part: "The aggregate number of capital shares, which the Corporation shall have authority to issue, shall be as follows: A. 50,000,000 shares of Common Stock with a par value of $.01 per share."

14. Pursuant to the Articles of Incorporation, the number of Authorized Shares could only be increased with the voting approval of at least sixty percent (60%) of the Company's outstanding shares. Specifically, Article XI of the Articles of Incorporation, titled "Amendments,"

provides in pertinent part that Article V "may be amended only by the affirmative vote of holders of outstanding shares representing at least sixty percent (60%) of the votes entitled to be cast for that purpose."

15. This requirement is in accordance with Pennsylvania law. Section 1914 of the Pennsylvania Business Corporation Law, 15 Pa. C.S. § 1914, requires that amendments to articles of incorporation increasing the number of authorized shares can only be adopted upon receiving shareholder approval of the greater of (1) the majority of a company's outstanding shares; or (2) the vote threshold listed in the articles of incorporation.

**B.     The Authorized Shares Amendment and the 2016 Proxy**

16. In early 2016, the Company's Board of Directors (the "Board") approved an amendment to the Articles of Incorporation increasing the number of Authorized Shares from 50,000,000 shares to 100,000,000 shares (i.e. the Authorized Shares Amendment).

17. On March 28, 2016, the Company filed a Schedule 14A Definitive Proxy Statement (the "2016 Proxy") with the SEC in connection with the Company's 2016 Annual Meeting of Shareholders (the "2016 Annual Meeting").

18. In the 2016 Proxy, shareholders were asked to consider four proposals. Proposal 1 sought the re-election of two directors. Proposal 2 sought shareholder approval of the Authorized Shares Amendment, as required by the Articles of Incorporation. Proposal 3 sought shareholder approval to adjourn or postpone the 2016 Annual Meeting in the event that there were not sufficient votes to constitute a quorum or to approve Proposal 2. Proposal 4 sought shareholder ratification of the appointment of BDO USA, LLP ("BDO") as the Company's independent registered public accounting firm.

19. According to the 2016 Proxy, there were 37,837,253 shares of common stock outstanding entitled to vote at the 2016 Annual Meeting. The Authorized Shares Amendment therefore needed the affirmative support of at least 22,702,352 shares (i.e. 60% of 37,837,253) to be approved. This was acknowledged in the 2016 Proxy, which stated: "Pursuant to an express provision in our articles of incorporation, Proposal 2 to amend the articles of incorporation to

4

increase the authorized number of shares of common stock will be approved if at least sixty percent (60%) of the votes entitled to be cast are voted FOR the proposal."

20. With respect to the election of directors, a shareholder could either vote "For" a given director or "Withhold" their vote. With respect to each of the other proposals, a shareholder could vote "For" that proposal, "Against" that proposal, or "Abstain" from voting on that proposal. With respect to shares held in account at a broker, bank or other similar organization, the owner of the shares is considered the beneficial owner, with the shares being held by the financial institution in "street name." The organization holding the account is considered the shareholder of record for purposes of voting. A beneficial owner is entitled to instruct that organization on how to vote the shares held in the beneficial owner's account.

21. The 2016 Proxy informed shareholders what would happen if a shareholder failed to provide their broker with specific voting instructions. As stated in the 2016 Proxy, in such a case, brokers would have the authority to vote only for Proposal 4, the appointment of BDO as the Company's independent registered public accounting firm. With respect to all other proposals, the brokers would not have authority to cast a vote and a "broker non-vote" would occur. As specifically stated in the 2016 Proxy:

> **If you hold your shares of the Company's common stock in "street name" (that is, through a broker or other nominee) and fail to instruct your broker or nominee as to how to vote your shares of common stock** (i) on the election of directors, (ii) **on the proposal to amend the articles of incorporation to increase the authorized number of shares of common stock,** or (iii) on the proposal to adjourn the annual meeting, if necessary, **your broker or nominee cannot vote your shares with respect to such proposals.** If you hold your shares in "street name" and fail to instruct your broker or nominee as to how to vote your shares of common stock on the ratification of the appointment of BDO USA, LLP as independent registered public accounting firm for the fiscal year ending December 31, 2016, your broker or other nominee has discretionary voting authority to vote your shares on such proposal. (emphasis added).

22. Thus, the 2016 Proxy represented that if a shareholder did not provide a broker with voting instructions, a broker *would not* have the authority to vote in favor of the Authorized Shares Amendment set forth in Proposal 2. As Proposal 2 needed the affirmative vote of at least 60% of

5

the Company's outstanding shares to be considered approved, not voting effectively constituted a vote "against" Proposal 2. This effect was specifically explained in the 2016 Proxy, which stated:

> How many votes are required for approval of the proposal to amend the Company's articles of incorporation to increase the authorized number of shares (Proposal 2)?
>
> Pursuant to an express provision in our articles of incorporation, Proposal 2 to amend the articles of incorporation to increase the authorized number of shares of common stock will be approved if at least sixty percent (60%) of the votes entitled to be cast are voted FOR the proposal. Because the vote necessary for approval is based on the number of votes entitled to be cast, and not the number of actual votes cast at the annual meeting, abstentions and **broker non-votes will effectively be votes against the proposal to increase the authorized number of shares of common stock.** (emphasis added).

23. Republic First shareholders holding shares in a brokerage account thus had two ways to oppose Proposal 2: (a) by filling out the proxy card with an "Against" or "Abstain" vote; or (b) by not providing their broker with voting instructions, causing a broker non-vote.

**C.   The Authorized Shares Amendment is Improperly Deemed Approved**

24. The 2016 Annual Meeting was held on April 26, 2016.

25. On April 28, 2016, the Company filed an 8-K with the SEC (the "April 8-K"), which disclosed the results of the Annual Meeting as follows:[2]

| Proposal 1 - Election of Directors | Votes For | Votes Withheld | Broker Non-Votes | Total | |
|---|---|---|---|---|---|
| Theodore J. Flocco | 16,952,493 | 120,480 | 8,881,894 | 25,954,867 | |
| Barry L. Spevak | 16,972,178 | 100,795 | 8,881,894 | 25,954,867 | |
| | | | | | |
| **Proposal 2 – Authorized Shares Amendment** | | | | | |
| | Votes For | Votes Against | Abstentions | Broker Non-Votes | Total |
| | 23,403,400 | 2,433,607 | 117,860 | - | 25,954,867 |
| | | | | | |
| **Proposal 4 - Ratification of BDO** | | | | | |
| | Votes For | Votes Against | Abstentions | Broker Non-Votes | Total |
| | 25,019,939 | 851,909 | 83,019 | - | 25,954,867 |

---

[2] Because the Company deemed Proposal 2 approved, voting results for Proposal 3 were not reported.

26. As shown above, there were purportedly 23,403,400 votes in favor of the Authorized Shares Amendment. Based on these results, the Company deemed the Authorized Shares Amendment approved, having barely exceeded the 22,702,352 votes necessary for approval. As stated in the April 8-K: "The shareholders approved the amendment to the articles of incorporation to increase the authorized number of shares of common stock from 50,000,000 to 100,000,000."

27. A closer examination, however, reveals that the Authorized Shares Amendment was not properly approved. As shown in the voting results above, there were 8,881,894 shares whose beneficial owners did not submit voting instructions to their broker. This is evidenced by the 8,881,894 figure that appears in the Broker Non-Votes column in Proposal 1, the election of directors. These 8,881,894 shares should have likewise registered as broker non-votes for Proposal 2, the Authorized Shares Amendment, as represented in the 2016 Proxy.

28. Instead, these 8,811,894 shares were improperly counted as votes cast on Proposal 2. This is evidenced by the fact that the Broker Non-Votes columns lists 0 broker non-votes for Proposal 2. In other words, Republic First shareholders owning 8,811,894 shares who opposed the Authorized Shares Amendment by not submitting voting instructions to their broker had their votes improperly cast on Proposal 2.

29. It is likely that all 8,811,894 shares were improperly cast in favor of Proposal 2. But even assuming all 2,433,607 votes against Proposal 2 and 117,860 abstentions on Proposal 2 were votes improperly cast by brokers, that would still leave 6,330,427 votes that were improperly cast in favor of Proposal 2.

30. Without these 6,330,427 or more votes for Proposal 2, the Authorized Shares Amendment would have easily failed.

31. In Exhibit 3.1 to the Form 10-K filed by the Company with the SEC on March 10, 2017, the Company included an amended version of the Articles of Incorporation, as amended through May 27, 2016. Article V now stated in pertinent part: "The aggregate number of capital

shares, which the Corporation shall have authority to issue, shall be as follows: A. 100,000,000 shares of Common Stock with a par value of $.01 per share."

## D. The Company Issues Stock in Excess of the Amounts Authorized Under the Articles of Incorporation

32. As of December 1, 2016, the Company had 37,939,378 shares of common outstanding.

33. On December 5, 2016, the Company completed a registered direct offering pursuant to which it sold 18,691,589 shares at a price of $5.35 per share for gross proceeds of $100,000,000. Upon consummation of the offering, the Company had 56,630,967 shares outstanding, 6,630,967 more shares than the 50,000,000 shares that shareholders properly authorized under the Articles of Incorporation.

34. As of November 6, 2018, the Company had 58,788,603 shares of common stock outstanding.

## CLASS ACTION ALLEGATIONS

35. Plaintiff brings this action on his own behalf and as a class action on behalf of those shareholders who were entitled to vote at 2016 Annual Meeting and who have continued to hold shares through the present (the "Class"). Defendant is excluded from the Class, as are Defendant's affiliates, subsidiaries, parents, successors or assigns, and any entity in which Defendant has or had a controlling interest. Also excluded from the Class are any members of the Board at any time from March 28, 2016 to the present, and their immediate families, legal representatives, heirs, successors or assigns, and any entity in which they have a controlling interest.

36. This action is properly maintainable as a class action.

37. The Class is so numerous that joinder of all members is impracticable. As of March 7, 2016, the record date for the 2016 Annual Meeting, the Company had 37,837,253 outstanding shares. While the exact number of Class members is unknown to Plaintiff at this time and can only

be ascertained through discovery, upon information and belief, there are many hundreds or thousands of members of the Class.

38. Questions of law and fact are common to the Class, including, the following: (a) the validity of the votes on the Authorized Shares Amendment; (b) whether the Company breached its contract with the Company's shareholders by amending the Articles of Incorporation without receiving appropriate shareholder approval; and (c) whether any shares of Republic First common stock have been invalidly issued.

39. Plaintiff is committed to prosecuting this action and has retained competent counsel experienced in litigation of this nature. Plaintiff's claims are typical of the claims of other members of the Class and Plaintiff has the same interests as the other members of the Class. Plaintiff is an adequate representative of the Class and will fairly and adequately protect the interests of the Class.

40. The prosecution of separate actions by individuals members of the Class would create the risk of inconsistent or varying adjudications with respect to individual members of the Class that would establish incompatible standards of conduct for Republic First, or adjudications with respect to individual members of the Class that would as a practical matter be dispositive of the interests of the other members not parties to the adjudications or substantially impair their ability to protect their interests.

41. The Company has acted, and refused to act, on grounds that apply generally to the Class, and is causing injury to the Class, such that final injunctive or declaratory relief is appropriate on behalf of the Class as a whole.

42. The questions of law and fact common to the members of the Class predominate over any questions affecting only its individual members, such that a class action is superior to any other available method for fairly and efficiently adjudicating the controversy.

## CAUSES OF ACTION

### COUNT I
### (Violation of the Articles of Incorporation)

43. Plaintiff repeats the allegations made above as if set forth in full herein.

44. The Articles of Incorporation constitute a contract between the Company on the one hand and the Company's shareholders on the other.

45. The Articles of Incorporation authorized 50,000,000 shares of common stock and expressly required that any increase in the authorized shares be approved by the affirmative vote of 60% of the Company's outstanding common stock.

46. In breach of the terms of the Articles of Incorporation, the Company increased the authorized shares to 100,000,000 without receiving proper shareholder approval.

47. As a result, Plaintiff and the Class members are being, and will continue to be, harmed.

48. Plaintiff and the Class have no adequate remedy at law.

### COUNT II
### (Determination of Validity under 15 Pa. C.S. § 1793)

49. Plaintiff repeats the allegations made above as if set forth in full herein.

50. Under Section 1793 of Title 15 of the Pennsylvania Consolidated Statutes, upon application of any person aggrieved by any corporate action, the court may hear and determine the validity of the corporate action.

51. As alleged above, the results of the vote on the Authorized Shares Amendment were improperly determined. Had the results been properly determined, the Authorized Shares Amendment would not have received approval of the necessary percentage of Republic First shares as required by the Articles of Incorporation for passage.

52. Following the 2016 Annual Meeting, the Company has improperly treated the Authorized Shares Amendment as having been approved, and has issued common stock in excess of the 50,000,000 shares actually authorized by shareholders.

53. As a result, Plaintiff and the Class members are being, and will continue to be, harmed.

## COUNT III
### (Against the Company for Declaratory Judgment)

54. Plaintiff repeats the allegations made above as if set forth in full herein.

55. Under the Declaratory Judgment Act (the "Act"), 42 Pa. C.S. § 7531-41, Pennsylvania courts "have power to declare rights, status, and other legal relations whether or not further relief is or could be claimed." According to the Act, "any person ... whose rights, status or other legal relations are affected by a statute, municipal ordinance, contract or franchise, may have determined any question of construction or validity arising under the instrument, statute, ordinance, contract or franchise and obtain a declaration of rights, status or other legal relations thereunder." The power of the courts to grant declaratory relief is to "be liberally construed and administered."

56. There is an actual, substantial, justiciable, and immediate controversy about the validity of the approval of the Authorized Shares Amendment.

57. A declaratory judgment regarding the validity of the approval of the Authorized Shares Amendment will terminate the controversy and clarify conclusively the legal rights, statuses, relations, and obligations of the parties.

58. A declaratory judgment is also necessary to determine the validity of any action taken pursuant to the authority purportedly granted by the claimed shareholder approval of the Authorized Shares Amendment, including but not limited to the issuance of any shares of Republic First common stock in excess of the 50,000,000 shares previously authorized by shareholders.

59. Plaintiffs and the Class are entitled to a judicial declaration that the Authorized Shares Amendment was not validly approved, and that any action taken pursuant to the authority purportedly granted by the claimed shareholder approval of the Authorized Shares Amendment is invalid.

## JURY TRIAL DEMANDED

60. Plaintiff demands a trial by jury of twelve members of all issues so triable.

## PRAYERS FOR RELIEF

WHEREFORE, for the foregoing reasons, Plaintiff requests an order:

A. Certifying this action as a class action and Plaintiff as Class Representative;

B. Declaring that the Authorized Shares Amendment was not validly approved and is unlawful, invalid and void;

C. Declaring that the Articles of Incorporation authorizes 50,000,000 shares of Republic First common stock and that all shares issued in excess of that amount are unlawful, invalid and void;

D. Enjoining Defendant from issuing any more shares of Republic First common stock in excess of 50,000,000;

E. Awarding Plaintiff the costs and disbursements of this action, including reasonable allowance of fees and costs for Plaintiff's attorneys, experts, and accountants; and

F. Granting Plaintiff and the Class such additional and different relief as the interests of justice or equity may require.

Dated: March 20, 2019

By: /s/ Mark R. Rosen

BARRACK, RODOS & BACINE
Mark R. Rosen
3300 Two Commerce Square
2001 Market Street
Philadelphia, PA 19103
Telephone: (215) 963-0600

OF COUNSEL:

Steven J. Purcell
Douglas E. Julie
Robert H. Lefkowitz
PURCELL JULIE & LEFKOWITZ LLP
708 Third Avenue, 6th Floor
New York, New York 10017
212-725-1000

Michael A. Toomey
BARRACK, RODOS & BACINE
11 Times Square
640 8th Ave., 10th Fl.
New York, NY 10022
Telephone: (212) 688-0782

## CERTIFICATION AND VERIFICATION OF PLAINTIFF

I, Doug Traher, duly verify that I have reviewed the foregoing Verified Shareholder Class Action Complaint, and that the allegations as to myself and my own actions are true and correct and that the other allegations upon information and belief are true and correct.

Dated: March 14, 2019

_____
Doug Traher